two paragraphs from the Ninth Circuit decision in United States v. Williams. And I explained in my brief that I think that that decision didn't explain enough all of the sentencing guidelines and I think that it was wrongly decided. In reviewing that decision further, I also think that that very brief discussion of the similarity test and a suspended sentence was not necessary to the Court's decision and can be disregarded as dicta and should be. So you're not asking us to overrule it. You acknowledge that we're bound by it unless we can distinguish it. Is that your argument? I think that you can overrule it. I think that it wasn't necessary. I'm sorry. How can we overrule our own decision? I don't think it was necessary to the decision, and here's why. The Court went through an analysis of how many criminal history points the defendant had. It granted one objection. Initially, the defendant had 12 points. That put him down to 11. And the Court says, well, that error was harmless because in 10, 11, or 12 points, you're still in criminal history category 5. Well, the issue of the suspended sentence, even if the defendant had won that objection as well, would still have placed him in criminal history category 5. So I don't think that that issue was necessary to the decision and that this Court can rule as such and provide a more lengthy decision discussing all the parts of that process. You're saying it's not that we can overrule it. You're saying it's dictum rather than holding so we don't have to follow it. Correct. Correct. Obviously, it's also distinguishable. But how can you say it's a dictum? I don't quite understand that. I mean, is it like an alternative holding to something else? I mean, courts can make alternative holdings. Well, it wasn't necessary. We rule against you on ground A, and then in addition, alternatively, we rule against you on ground B. In a logical sense, it's not necessary to go to ground B, but that isn't considered dictum under the Ninth Circuit law. I think it's a close call. I think that it was – the Court didn't have to address that issue to determine that the criminal history points weren't going to go far enough to make a difference in the score. But aren't you really asking us to disregard the language at page, I think it's 1195 of 291F3rd, that talks about how we treat convictions that where the sentence is totally suspended? I am. Of course, as I stated in my brief, the alternative is my case is distinguishable. Mr. Hernandez's case is distinguishable in that his sentence wasn't completely suspended. I think it would be logical that if something's completely suspended, you count it. But if it's partially suspended, that doesn't make any sense. I agree. Then why argue if you agree it doesn't make any sense? Because I don't think that, with all due respect, that the decision in the Williams case makes sense. Reading through the criminal history – That's your first point, that you just want us to overrule Williams. I think you're saying something a little different from overrule there. I think you're saying the guidelines say one thing. Williams says the other. Williams is wrong as far as it goes. Don't extend it to another case and compound the error. That's true. And if I can just add the havoc – Williams is what doesn't make sense in your view. Yes, and it's – You're saying just follow the guidelines where it's not factually analogous to Williams. Correct. If I could just add the havoc that this has caused in our district, and no one that I knew of knew of Williams before this briefing came down and the U.S. attorney noticed these two paragraphs. In talking to attorneys from other districts routinely, the only time that is counted for criminal history score is the time that is not suspended, because that's what the guidelines seems to say. There's inconsistency among judges about whether or not to apply this, when to apply it. Some judges are limiting it to its facts. Other judges are applying Williams routinely. Other judges are rejecting Williams outright. We certainly need some consistency on this issue. I think that the guideline is clear. The Eighth Circuit decision that I cited in my brief provides a very full explanation of the guidelines as a whole, and that you don't just treat the language that a sentence that is completely suspended or stayed shall be counted. Clearly, that's not true. If a sentence is 20 years old and it was completely suspended or stayed, it's counted, it's not counted. There are instances where something is completely suspended or stayed and not counted, and for whatever reason, that context wasn't a part of the decision. So I think that that's an important issue that the Court should address. And so I appreciate your alerting us to the problems that some of our decisions cause. We don't often get that kind of feedback, so that's a helpful argument. Let me ask you a related question. Why shouldn't we look to, I guess it would be the threats statute in trying to determine what an analogous conviction would be under the Toppenish Code in order to determine whether or not it should be counted? Even a state threat statute or a federal threat statute? The district court attempted to do that, and I think that that raises two issues. The district court analogized threat to do harm as harassment, which is a mis- can be a misdemeanor or a felony under Washington State law. Actually, in this case, I think it would be a Class C felony, as I read RCW 9846.0202. Depending on which facts supported the conviction. Well, the statute says it's a Class C felony when the person harasses another person under subsection 181 by threatening to kill the person's friend. Right. That seems to be a mirror image of what your client did. That goes, yes. Even though he was prosecuted under the municipal ordinance and not under State law for the offense. I think that that goes to what do you look at. And I don't think we look at what the person did or did not do. If you read the pre-sentence report, there's two instances of altercations or confrontations, is a better way to put it, between the defendant and the store owner. On one occasion, he just said something like, well, I'm going to fight. And in another instance, there was an allegation that he said, well, I'll get a gun and shoot you.  I think for that reason, you don't look at that. What's wrong with the district court looking at the facts, looking at the RCW provision, and saying, you know, it's a lot more like this Class C felony. I'm going to count it for that reason because it fits. I think that you don't look to the facts. I think that this Court's decision in Lopez-Pastrana in the footnote, footnote 11, I think it's more serious. I think that if you take the government's approach, that this is an offense against the public, that it's a less serious offense. Because disorderly conduct can be committed by a person threatening, fighting, using abusive language towards another person. The way the disorderly conduct cases that I used to see all the time, it was typically somebody who urinated in an alley or on the sidewalk, or somebody who yelled at a policeman, somebody who didn't go away when a policeman told them to go away, but it wasn't quite interfering with an arrest, something like that. And way lower level of seriousness than what this fellow was, even the elements of the charge against this fellow. I think that you only look at the elements. The elements are a direct or indirect threat to the person or property. That's all. The elements don't even include a threat to kill. And that would have been a separate crime. So I think that you have to assume he wasn't convicted of a threat to kill. Alitoson But isn't, counsel, isn't the whole purpose of the exercise, the district court is presented in the PSR with a person who has had a number of problems with the law. And the judge is trying to decide whether or not those run-ins are going to count towards the computation of the score for this particular federal offense. And he's got three different incidents, all of which seem to suggest that the client has sort of an escalating problem with violence, probably culminating in what could be characterized as an attempted kidnapping in California. Why is it improper for the district court for sentencing purposes to view the seriousness of that conduct based either on the offense of conviction or the elements of the crime that was involved and conclude that they are properly accountable for sentencing guidelines? I think that sort of inquiry into actual facts and escalating behavior may justify an upward departure, but not the mandatory enhancements that take place. When it's an enhancement, it's a legal definition. So you think the district court could have simply said, I don't think that this fellow's criminal history adequately represents the serious escalating nature of his conduct, and therefore I'm going to depart upward because I think his criminal history is underlying. Could have. There was no mention made of an intent to depart upward. But I think that sort of characterization, when you look at the individual and his circumstances, not the nature of the prior convictions, then that sort of inquiry can be made. But when it comes to what was this conviction for, that's a very limited set of statutory elements. And for the very reason that the Supreme Court set out in Taylor and this Court has followed in the many decisions since then, we don't want to have an inquiry, well, which threats to the store owner were the basis of this threat to do harm conviction? The circuit clearly follows the modified Taylor approach, don't we? Yes. Wasn't that our in-bank decision? Yes. Okay. And in that sense, there's nothing improper with relying upon his stipulated facts from his own, I guess it was a pleading that he filed in which he agreed on the record were the facts surrounding what I called the attempted kidnapping. I can't remember what that was. Unlawful imprisonment. Thank you. I mean, there's nothing wrong with the district court looking at those facts where the defendant admits them, is there? I think there is. And I think one very important thing never happened. The defendant never admitted those facts. The attorneys stipulated to the use of a factual summary that was presented in a motion to dismiss. For purposes of entering his plea. For purposes of a factual, of allowing the Court to use that to find a factual basis for the plea. This Court How is that different? From a Rule 11 colloquy where we go through the litany and then, you know, the government or the Court says, Assistant U.S. Attorney, what's the government's evidence going to show? And at the end says to the client, do you agree that's what the government's evidence would show? And the client says, I do. Because that never happened. But his lawyer did it on his behalf. What's wrong with that? In a very arcane manner. The judge says stipulated 995 motion and the attorneys say stipulated. No one asked. At that point in time, the judge was done with Mr. Hernandez. Hernandez asking him, what do you understand, what do you not? Alito I think it's good law, as Judge Reimer described it in one of her opinions, to play ostrich to the record. We really are asking the district court to put on blinders and ignore relevant evidence that is pretty probative and reliable. And you're saying we can't do that for purposes of fashioning an appropriate sentence? I think it's very important. And this Court, in the very recent decisions that I cited in Banuelos and Huerta Guevara, that it's important what the defendant actually admitted. And in this Court's decision in United States v. Pena, where it talked about a Rule XI colloquy, it talked about what the lawyer says the client understood. The lawyer made a representation in that case that the client understood the elements of the offense. And this Court said, no, that's not good enough. The Court has a duty to inquire. And it was a Rule XI decision, but also of constitutional magnitude. But the Court had to do that. The client was present when the lawyer said he was stipulating the facts from their motion? The client was present. Why doesn't that apply to him? It's his motion. It's his lawyer. He's present in the courtroom. Why would you say that's not sufficient? A couple of things. First is the facts that were submitted in the motion to dismiss were necessarily the government's facts. That's just the way that a motion to dismiss would be. The government's facts, if taken as true, don't support these offenses. And so it was never the defendant's version of the events that was submitted. But during the guilty plea hearing, the Court did go through, has anybody threatened you with harm to plead guilty? Are you pleading guilty? Went through all of that personally with the defendant, but then at the end never said, never made even clear what it was doing to a nonlawyer or even to a lawyer who's not familiar with California law to sit in a courtroom and have a judge address the attorneys and say, factual basis stipulated 995 motion. Mr. Hernandez-Hernandez is from Mexico, monolingual Spanish speaker. He had an interpreter who knows what type of interpretation was done. For him to be presumed to have understood that and agreed with it, and agreed not just, yes, you can use that as a factual basis for the plea, I'm pleading guilty, I don't care. But that, yes, that's actually true. I agree with every word of that. If we think in a civil context of collateral estoppel, of what is necessary to a judgment actually litigated and decided, it's not all the facts that were presented in the case. Kennedy would be collaterally estopped in a subsequent civil – let's say she sued him for civil false imprisonment if there is such a tort, I guess there is. Wouldn't he be collaterally estopped to deny those facts that he had admitted as part of his criminal plea to support the plea? I think he would be estopped from saying, I never unlawfully imprisoned you. I don't think he would be estopped. Collaterally estopped to relitigate those facts that he admitted. I think there is case law on that, that the facts that support the underlying criminal conviction collaterally estop you from relitigating those in a subsequent civil case. So I'm not sure your collateral estoppel argument holds. That may not hold. Is there any precedent under Rule 11? Is there any precedent under Rule 11 that says the judge cannot rely on an attorney's statement of facts? Well, the Court's decision in United States v. Pena that I cite in my brief does talk about an attorney not being able to bind the defendant when it comes to such fundamental issues, and in that case it was whether or not the defendant understood each and every element. The Court in this case very analogously did not go over each and every element. It would have been a simple task to go through all of the elements of unlawful imprisonment and to say, well, which one is it? Is it fraud, violence, force or menace or whichever one is under California law that you committed? And he says, well, it was violence. Well, then you have your record. And in Washington State, I think in most states they go through that level of care and it wouldn't take that long. But in California, perhaps because the Supreme Court just lumps them together and considers it all not a crime of violence altogether. Well, it's not the Supreme Court. It's the legislature. And the legislature. And how they draft the Penal Code provision. They don't distinguish. The distinction isn't important. So of course, why would Mr. Hernandez, Hernandez in that proceeding, object and say, you know, I don't agree with all those facts, but I want to plead guilty because I know what I did made me guilty. And if we go down this road, well, how many more facts can we look at? And I talked about it in my brief. Can we look at if there's a Rule 29 motion made at a jury trial and the only facts submitted in support of the jury verdict were crimes of violence. Can we then look at all that and say, well, you know, that's the only facts that were submitted, like a summary judgment analysis, were crimes of violence. So this must have been a crime of violence. Clearly, we can't do that. And if they return a special interrogatory, just as if Mr. Hernandez, Hernandez had been asked, which way are you guilty? Or if the jury had said, which way? So in that case, you would agree that we could look at the interrogatory. Yeah. And I think that the Court's recent decision says, what did the defendant admit to? The test is, in a jury verdict case, what did the jury verdict say? And the defendant's guilty plea case, it's what the defendant admit to. In the Huerta Guevara case that I cited, there was some briefing in a later case where the defendant set forth her version of the events. And this Court said, well, that's a theft offense. The issue was whether or not she'd committed a theft offense that was an aggravated felony. And the Court said, well, she described it as a theft offense, but there's no evidence indicating that during her guilty plea colloquy, she admitted that conduct. Counsel, let me ask you something about false imprisonment. Let's say that it is going too far afield to look at the motion practice to determine what the facts are. Let's say that that takes Taylor one step too far. I'm still backed up a little bit. The California statute says false imprisonment is the unlawful violation of the personal liberty of another. And then I look at the punishment section, and it says if the false imprisonment be affected by violence, menace, fraud, or deceit, it shall be punishable by imprisonment in a state prison. Right. That's what turns it into a felony. So I know that it's possible to accomplish the felony of false imprisonment entirely and solely by deceit with no violence. I'm trying to put this in concrete terms in my mind, and I'm having – I'm not sure that I'm getting it right. How do you falsely imprison somebody by deceit or by fraud? Well, in the abstract case, I suppose you could trick someone. Well, I'm sure that you've read all the squibs and are familiar with this business. How have people actually done it? I apologize that I am not familiar. I would imagine it would be that you trick someone to be in a confined space or something like that. Can I tell them that if you come out of the room, the goblins will get you? What? You might defraud them. You might say, well, you know, for money. You're just being a conclusory there. Make up an actual story for me, a hypothetical case. If you were exposed to a virus and if you don't stay in this room for 48 hours until we see if you're okay, you might die. You'll be paid so much money if you stay in this room for such and such period of time when that would never happen. So I think that there's ways. The only way I can figure it, the only way I can construct a realistic story in my mind is a hospital where they tell you you can't check out, your insurance hasn't confirmed that they'll pay you. And that could happen as well. I think that the Supreme Court of California and the People v. Henderson decision talks about, they just, and I think that we should defer to a certain extent to the State of California and how they interpret their own laws. Can you give me a squib there? I'm trying to imagine a nonviolent false imprisonment. I'm your long-lost brother from Fairbanks. Stay in the car with me for a few days so we can renew acquaintance. That's realistic. That's like my one of the staying in the hospital because you're not paying, I guess. I keep having trouble. I stand corrected. There could be. It's always hard to think of instances in the aspect. I'm taking it seriously because I'm sympathetic to your argument that looking through the motion practice is taking Taylor a step too far. Taylor says keep it simple. Look at the official papers and see what they establish. Taylor also permits us, as I think counsel said, to look at what a jury says in a special verdict, or it permits you to look at what a defendant says in their plea documents and the plea colloquy. Here, really, the only question that I see is whether the defendant's bound by what his lawyer said. If the defendant had said the facts are as stated in that motion, no problem. But here the lawyer said we stipulate to that for purposes of the guilty plea, and you're arguing that's not sufficient. Correct. What I'm having trouble with is why that isn't sufficient because lawyers speak for their But I think in the guilty plea. And it says we have authority that says that what the client said at the plea colloquy would be sufficient. The client admitted to there. Is there any authority that says the client can't make an admission through their lawyer? I think in the guilty plea colloquy context, you can't. And I get that from the Pena case that I've been citing. I think the United States v. Pena, it's cited in my briefing. What's the client's name for the Pena case? It is 314F3-1152, a 2003 case. But I think also another important thing is I don't think the attorney also didn't say those facts are actually true. All the attorney said was I stipulate that the court can look at the testimony that we quoted in the motion to dismiss to provide a factual basis for the plea. In California, you can submit a police report. Here, Your Honor, you can look at this police report. You can look at all sorts of things in California for a factual basis for the plea. That's not a statement that this is true. That's not an admission. It's just the judge needs to be convinced that there's some facts from somewhere that could support a guilty plea, not that those facts are actually true. And so I think although I maintain that the attorney didn't make an admission on behalf of the client, I don't think that what the attorney did, even if the attorney could make that kind of fundamental admission on behalf of a client as to what the client did or did not do, I don't think that that's what the attorney was doing in simply briefly stipulating to the use of testimony presented, initially presented at probable cause hearing, later submitted for a motion to dismiss as a factual basis for the plea. We've gone way, way over time, so I'd better ask you a question. Thank you. Thank you, Counsel. May it please the Court? Jane Kirk on behalf of the United States. I guess I would. Okay. Okay. I think that we all see these issues from time to time. Yes. I remember one precedent that was said in the briefs that I was involved in, the Franklin case. And we kind of went over all the cases following Taylor. It's clear that we can look at what is said, what's admitted by a defendant at a plea colloquy. Yes. The issue here, though, is whether we can look at what the lawyer says as the basis for the facts. And the defendant's mouth is shut and the defendant isn't asked for the judge. Is there any precedent that bears on that? I mean, there are a lot of Taylor-line cases. Is there any precedent that bears directly on whether we can look at what the lawyer says on behalf of his or her client at the time of that plea colloquy? There is no precedent that I'm aware of that directly says that. You can rely on what the attorney says. And in this case, though, we have more. We have what the attorney said, the facts, the only facts that were admitted at the change of plea and sentencing hearing in California. But we also have the uncontested PSR. And I know the uncontested PSR by itself would not be sufficient. But you have the uncontested PSR and the facts that occurred, that were admitted at the California sentencing. I have problems with this. Okay. Let me tell you what they are so you can address them. The categorical approach of Taylor strikes me as having a couple of purposes. One is labor saving. A judge sentencing does not have to peruse the entire record in numerous other cases, as opposed to the case he's sentencing in. That's very important. It's important for not only the labor saving reason, but also a second reason. And the second reason is that the sentencing becomes arbitrary. If you go to the extent of perusing the entire record in prior cases, the reason it's arbitrary is that different jurisdictions have different practices of preserving records. Sometimes you'll be able to obtain the record, sometimes you won't. So it will be capricious whether a person's conduct in the prior case affects a sentence or not. It will depend on recordkeeping practices rather than the nature of his misconduct. That's why I'm inclined to think that stretching the modified categorical approach, another step, is dubious here. You have to believe the opposite or have to urge the opposite. Yes, I do. Go ahead and tell me why these considerations are mistaken. Because the modified categorical approach does permit the court to look at judicially noticeable facts. A factual statement submitted by the defense, the defendant's attorney in this case at the change of plea hearing is a judicially noticeable fact. And it's just — it's simply permitted in the Ninth Circuit to look at judicially noticeable facts. Yes, there will be differences in — It strikes me that that's not categorical and it's not modified categorical. It's exploration of whatever facts can be ascertained to a reasonable level of certainty from the prior criminal cases. But — It's not categorical at all, in other words. Well, it's not, but it is modified categorical. And — Modified to the point that it's not categorical. Correct. And it is — it — it — clearly, the Ninth Circuit permits that, that inquiry. It's a judicially noticeable fact. You look — you look at the facts. And the reason it isn't going on a far-searching — it doesn't lead the district court astray or use the valuable resources to a bad advantage is because these are the facts that were submitted by the defendant. They are not in dispute. We are looking to — when the — when the offense is overbroad as compared to the guideline, as I understand it, we're looking to, if it was a jury trial, what did the jury actually determine? You can't go back and retry the facts of the underlying case. Correct. But if the jury gave an interrogatory answer and it makes clear what they found, you can look at that as well as the offense. Yes. And similarly, if there's a guilty plea, you can look at what the defendant said and admitted in connection with the — with the guilty plea, because that's what he pleaded to. But once you go beyond that, then it starts to get dicey, you know, like when you get into a PSR. And then we do have these cases of if you have an unobjective PSR, is that enough? And I don't think we've ever made that clear. No. I think that the Ninth Circuit has left that open. And in this case, even though the defendant did not stand up and say, yes, those are the facts that I'm pleading to, if you look at those facts, you cannot find a fraud and deceit element in those facts. If we look at those facts, strikes me, is the critical statement of what you said. Yes. And what I'm thinking is that what you're urging is analogous to taking a previous case, instead of pleading out, it went to trial, went to a jury trial. So what we do is we read the transcript of the lawyer's opening statement in the jury trial in the previous criminal case, and where the lawyer says, we concede that my client did A, B, and D, but we're going to put at issue C. That we then say under the modified categorical approach, A, B, and C are established, because we happen to have a transcript of the lawyer's opening statement from the prior criminal jury trial. I think there are two different cases. There's the case where the case went to a jury trial and where they entered a plea. With a jury trial, you're opening up a Pandora's box when you go to the transcript and try to discern what, in fact, the case is. We're not talking about the plea colloquy. We're talking about motion practice separate from the plea colloquy. But the defendant at the defendant. The plea colloquy, the defendant is right there, and the judge says, what did he do? And he says, I did thus and such. Or sometimes the judge says to the U.S. attorney, what did he do? And the U.S. attorney says, he did such and such. And the judge says to the defendant, is that so? And the defendant says, yes. I thought we were talking about a plea colloquy here, except the judge, instead of inquiring with the defendant, asked the lawyer at the plea colloquy with the defendant there if the lawyer stipulated, if the defendant stipulated to the facts per their motion. It wasn't ruled out in conference colloquy, wasn't it? Yes, it was. And if I said differently, I misspoke. That's what the jury trial. It was a plea colloquy. And here it was the defendant's own position that was, yes, it was a motion practice, but then they used that document at the plea colloquy. And those facts, I guess I go back to, along with the uncontested PSR, is what brings this all together. Do you remember the names of cases where we've left open this issue about the uncontested PSR? Yes. I believe that in Corona-Sanchez, the PSR, reciting the PSR facts, the Ninth Circuit said that that information is insufficient. It doesn't say that it's not considered. It's simply insufficient. And I believe also in Franklin, my reading of Franklin. I didn't remember what we said about that there. We said something. Well, in Corona-Sanchez, we talk about, and I'm reading from 291 F. 3rd at 1211 and 1212. We said that if a defendant enters a guilty plea, the sentencing court may consider the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of the generic crime. Charging papers alone are never sufficient. However, charging papers may be considered in combination with a signed plea agreement. And I guess what we're looking at here would be considered part of the transcript of the plea proceedings, right? Yes. So that gets back to the question that Judge Kleinfeld asked, and that is, can we treat the admission by the attorney as if it were the same thing as the defendant saying, yes, that's what I did? And I think, yes, for two reasons. Because it was the sole basis of this. Two reasons. Because the information in that motion practice is also repeated in the PSR and that that is uncontested. Well, that's a little bit. That sort of begs the question, because presumably the PSR was written based upon their review of the same documents, right? Yes. And it doesn't really corroborate it unless we know that the PSR was prepared from some other source. But in this case, if the defendant said, no, I didn't do that crime, he would have contested the PSR and said, no, that wasn't the crime, I did it by fraud and deceit. And he never did that. He never came forward. Plus, then the other reason is that there's nothing in that factual basis that could  The factual basis that was cited in the motion or in the stipulation could be a little bit off in this or that detail. But even if it's off somewhat, it doesn't change it into deceit. If it's kidnapping, it's like sticking my car or whatever. Yes. Or I'm getting your car. Right. It was a blocking off of a car. It was a physical action. How do you do a false imprisonment by deceit? Pardon? How do you do a false imprisonment by deceit? I was sitting back there trying to think of one, and I can't. I didn't like my brother from Fairbanks. The gentleman didn't like my hospital hypo. I can't think of one. No, you'd have to lock something. And I couldn't think of one by deceit. Unless there are further questions. I have another question. Okay. I have a question on the wife beating. As I understand it, when Hernandez-Hernandez committed the crime, it was a wobbler under California law. And because he got five months in jail instead of being sent to prison, they distinguish between being sent to jail and being sent to prison. That makes it not a felony. Is that correct? Yes. Thank you. Thank you, Counsel. U.S. v. Hernandez-Hernandez is submitted. United States v. Gutierrez-Silva is submitted. United States v. Peterson. Good morning, Your Honors. Robert Gombiner for the appellant, Thomas Peterson. Because the not-going-to-announce rule was violated, the evidence in this case should be suppressed. Let me ask you a question about the not-going-to-announce rule. My thought was the point of it is so that the people in the house will know that it's police at the door.
judges: Kleinfeld, Gould, Tallman